# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-341V
UNPUBLISHED

| | |
|---|---|
| S.C.,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: June 14, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Human Papillomavirus<br>(HPV) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for petitioner.

*Mollie Danielle Gorney*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING DAMAGES[1]

On March 5, 2019, S.C. filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of a human papillomavirus ("HPV") vaccine administered on April 25, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount of **$163,363.46**, **representing $160,000.00 for actual pain and suffering, and $3,363.46 for past unreimbursable expenses.**

## I. Relevant Procedural History

A year after the claim's initiation, Respondent filed a status report in February 2020 indicating that he was willing to engage in tentative discussions with Petitioner regarding a proffer of damages. ECF No. 20. Respondent then filed a Rule 4(c) Report on April 27, 2020 (ECF No. 23) conceding entitlement, and I issued a ruling finding Petitioner entitled to compensation on April 30, 2020. ECF No. 25.

Over the next seven months, the parties attempted to informally resolve the issue of damages. *See generally* ECF Nos. 29-30, 35, 38-39. However, they confirmed on December 1, 2020, that they had reached an impasse in their discussions. ECF No. 40. I subsequently set a briefing schedule to resolve Petitioner's damages.

Petitioner filed her brief ("Br.") in support of damages on January 15, 2021 (ECF No. 44), and Respondent responded ("Opp.") on March 1, 2021. ECF No. 45. Petitioner filed a reply brief ("Rep.") on March 23, 2021. ECF No. 47. I thereafter proposed that the parties be given the opportunity to argue their positions at an SPU Motions Day hearing, at which time I would decide the disputed damages, including the appropriate amount of compensation for Petitioner's pain and suffering, past unreimbursable expenses, and future unreimbursable expenses. ECF No. 48. The parties confirmed that they were amenable to this proposal (ECF No. 49), and the hearing was held on May 28, 2021. This written decision memorializes my resolution of the matter.[3]

## II. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined

---

[3] At the end of the hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

2

to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

3

alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III.     Appropriate Compensation in this SIRVA Case

#### A. Pain and Suffering

Petitioner's awareness of her injury is not disputed, leaving only its severity and duration to be considered. In determining an appropriate pain and suffering award, I have carefully reviewed the complete record in this case. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases. However, my determination is ultimately based upon the specific circumstances of this case.

In her briefing, Petitioner requests an award of $195,000.00 in past and future pain and suffering. Br. at 30; Rep. at 15. To support her proposed award, Petitioner cites to several reasoned SIRVA damages decisions in the Program involving surgical intervention, including *Collado*,[5] *Dobbins*,[6] *Curri*,[7] *Reed*,[8] *Blanco*,[9] and *Hooper*.[10] Br. at 28-30. Petitioner asserts that the above cases – which include actual pain and suffering awards ranging from $120,000.00 to $185,000.00 – should be used as guidelines for determining an appropriate award in this matter. *Id.* Given the severity of her injury and the duration of her treatment course, however, Petitioner argues that a greater award is warranted. *Id.* at 30.

Respondent, by contrast, proposes that an award of $120,000.00 is appropriate

---

[5] *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for pain and suffering).

[6] *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering).

[7] *Curri v. Sec'y of Health & Human Servs.*, No. 17-432V, 2018 WL 6273562 (Fed. Cl. Spec. Mstr. Oct. 31, 2018) (awarding $130,254.11 for pain and suffering).

[8] *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for pain and suffering).

[9] *Blanco v. Sec'y of Health & Human Servs.*, No. 18-1361V, 2020 WL 4523473 (Fed. Cl. Spec. Mstr. July 6, 2020) (awarding $135,000.00 for pain and suffering).

[10] *Hooper v. Sec'y of Health & Human Servs.*, No. 17-12V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $185,000.00 for actual pain and suffering and $1,500.00 per year for life expectancy for future pain and suffering reduced to net present value).

4

for Petitioner's pain and suffering. Opp. at 12. In support, Respondent asserts that Petitioner's overall treatment course reflects a "moderately severe" SIRVA that improved following surgery. *Id.* at 13. Addressing the specific damages decisions cited by Petitioner, Respondent argues that *Reed, Hooper,* and *Blanco* involved more severe injuries and non-medical circumstances that justified higher pain and suffering awards. *Id.* at 13-15. The other decisions cited by Petitioner, as well as *Kelley*[11] and *Rector*,[12] reflect factual circumstances that are more analogous to this case, and Petitioner should thus be granted a lower pain and suffering award commensurate with these cases. *Id.* at 15-16.

Pursuant to my oral ruling on May 28, 2021 (which is fully adopted herein), **I find that $160,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[13] My decision arises from several determinations.

The record evidence as a whole reflects that Petitioner sustained a moderate-to-severe SIRVA, justifying an above-median pain and suffering award (and not an award at the level requested by Petitioner). Petitioner sought orthopedic treatment only two weeks following her vaccination on May 9, 2017, with complaints of shoulder pain and occasional stabbing. Ex. 4 at 65. On examination, Petitioner presented with painful range of motion as well as positive Neer's and Hawkins sign, and she was referred to physical therapy. *Id.* At an initial physical therapy appointment two days later, Petitioner rated her worst shoulder pain as "8" out of "10" and presented with 30 degrees of active flexion and 15 degrees of active abduction, among other findings. Ex. 7 at 29-30.

An MRI of Petitioner's left shoulder completed on May 16, 2017, revealed large glenohumeral joint effusion; mild subacromial-subdeltoid bursitis; edema in the supraspinatus muscle medially; moderate-to-high grade articular- and bursal-sided tearing of the anterior fibers of the supraspinatus tendon; long head biceps tendinosis with possible partial tendon tearing at the pulley; and degenerative labral tearing superiorly. Ex. 4 at 42-43.

---

[11] *Kelley v. Sec'y of Health & Human Servs.*, No. 17-2054V, 2019 WL 5555648 (Fed. Cl. Spec. Mstr. Aug. 2, 2019) (awarding $120,000.00 for pain and suffering).

[12] *Rector v. Sec'y of Health & Human Servs.*, No. 17-1767V, 2020 WL 4692449 (Fed. Cl. Spec. Mstr. July 13, 2020) (awarding $120,000.00 for pain and suffering).

[13] Petitioner in her briefing requests an award for past and future pain and suffering without specifically delineating past and future damages components. Br. at 30. However, I do not find the evidence preponderates in favor of an award for future pain and suffering in the absence of corroborating evidence from a treating provider as to Petitioner's future symptomatology and limitations. My award for actual pain and suffering has nevertheless incorporated Petitioner's alleged residual symptoms and limitations, to the extent they are supported by the available record evidence.

On May 31, 2017, Petitioner underwent a follow-up orthopedic appointment. *Id.* at 63. She reported "significant" pain and again presented with reduced shoulder range of motion. *Id.* Her orthopedist administered a steroid injection into the biceps sheath, anterior left shoulder. *Id.*

Over the subsequent four months, Petitioner continued to report significant ongoing shoulder symptomology despite undergoing physical therapy and three additional steroid injections. *See, e.g.*, Exs. 4 at 56-60, 62; 7 at 66. An August 2, 2017 MRI of Petitioner's left shoulder further revealed significant capsular constricture in the pouch that was new compared to Petitioner's prior imaging from May 2017. Ex. 4 at 28-29, 56.

At an orthopedic appointment on September 25, 2017, Petitioner indicated that she wished to proceed with surgical intervention. Ex. 6 at 31-33. On October 12, 2017, Petitioner underwent a left shoulder arthroscopic supraspinatus rotator cuff repair; subacromial decompression; and complete glenohumeral synovectomy procedure. *Id.* at 27-30.

Following her surgery, Petitioner underwent follow-up orthopedic visits and extensive physical therapy, and her symptoms and functioning were observed to improve. For example, at an April 3, 2018 physical therapy appointment, Petitioner reported that she felt "85% better overall," although she continued to report pain with lateral reaching. *Id.* at 7. She rated her current pain as "1" out of "10," but noted that her pain at worst was "4." *Id.* On examination, Petitioner presented with mildly reduced range of motion and weakness of the left shoulder. *Id.* at 8. At Petitioner's final orthopedist appointment, on June 18, 2018, Petitioner presented with no tenderness and active forward elevation greater than 150 degrees. *Id.* at 1-2.

Petitioner thereafter continued undergoing physical therapy through September 14, 2018. At that time, she was noted to have continuing residual deficits in her left shoulder stability, functioning, and range of motion. Ex. 13 at 69. Her therapist observed that, although Petitioner had progressed with left shoulder strength and range of motion since the start of her treatment, she had "plateaued in improvements" and would be discharged from physical therapy to a home exercise program. *Id.*

The record subsequently reflects an approximately 21-month gap in medical treatment. Petitioner resumed physical therapy on June 25, 2020, for residual functional limitations and pain. Ex. 16 at 4, 11. Petitioner noted that she had been adherent to her home exercise program but had not progressed as desired since her prior discharge. *Id.* at 11. She presented with 165 degrees of active flexion, 178 degrees of active abduction, and positive impingement, among other findings. Ex. 16 at 12-13. Petitioner attended three additional physical therapy sessions through July 9, 2020. *Id.* at 5-10. There is no record of any subsequent treatment.

In his brief, Respondent asserts that Petitioner has not established a nexus between her initial post-vaccination left shoulder pain, for which she sought treatment through September 2018, and her later symptoms, which were documented in the physical therapy records beginning in June 2020. Opp. at 10 n.2. However, I find that the record evidence preponderantly supports that Petitioner's later symptoms were likely a continuation of her previous injury, and thus should be weighed in assessing damages. Indeed, Petitioner's final physical therapy records from September 2018 document ongoing symptomatology, and there is no record evidence of any intervening injuries during the subsequent gap in treatment that might alternatively explain their origin. Petitioner has furthermore provided credible explanations for her decision to suspend treatment in September 2018. Ex. 18 at ¶ 2.

Although I find that Petitioner's total injury duration lasted approximately 38 months, my award for pain and suffering has nevertheless accounted for the aforementioned gap in treatment. I have also weighed the cumulative record evidence documenting Petitioner's pain and functional limitations, her two MRIs, her four steroid injections, her October 2017 surgery, her 95 physical therapy sessions (30 sessions pre-surgery and 65 sessions post-surgery), and her overall treatment course.

I have additionally considered the reasoned damages decisions cited by the parties. Initially, I find that a lower pain and suffering award is warranted here in comparison to *Hooper*. Although both petitioners underwent surgery and received extensive treatment, the *Hooper* petitioner was recorded as having a worse overall prognosis, including a 50% loss of functioning in the injured arm. *Hooper*, 2019 WL 1561519, at *4. The records in the present case, by comparison, reflect that Petitioner's surgery improved her symptoms, and she was mostly recovered at the conclusion of her treatment with some residual pain and functional limitations.

Conversely, I find that a higher award is warranted in this case compared to *Blanco*. As with this matter, the claimant in *Blanco* received four steroid injections and underwent surgical intervention for treatment of her SIRVA. *Blanco*, 2020 WL 4523473, at *2-3. However, this case involves significantly more physical therapy (95 sessions vs. 43 sessions). I also note that Petitioner has credibly described the ways in which her SIRVA affected her active lifestyle and continues to cause difficulties with activities of daily living. *See generally* Exs. 15, 18. $160,000.00 is a reasonable award for Petitioner's actual pain and suffering.

### B. Past Unreimbursable Expenses

The parties agree that Petitioner is entitled to reimbursement of past expenses and mileage in the amount of $3,331.00. Br. at 16; Opp. at 9. However, they dispute an additional $2,118.73 in treatment-associated costs. For the reasons set forth below and

at the hearing, Petitioner is awarded only $32.46 of the additional disputed expenses, reflecting the following:

- $20.00 (co-pays for June/July 2020 physical therapy sessions at RISE PT). As previously indicated, I find that these physical therapy sessions represented a continuation of treatment for Petitioner's post-vaccination symptoms. Br. at 21 (ECF No. 44 at 21, 133);

- $3.23 (mileage for June 20, 2017 lab work). I find that this expense was related to treatment of Petitioner's SIRVA. Br. at 21 (ECF No. 44 at 21, 38);

- $3.23 (mileage for July 25, 2017 lab work). I find that this expense was related to treatment of Petitioner's SIRVA. Br. at 21 (ECF No. 44 at 21, 39); and

- $6.00 (disability placard). I find that this expense was related to treatment of Petitioner's SIRVA. Br. at 17 (ECF No. 44 at 21, 34).

The remaining expenses requested by Petitioner are denied. Br. at 17-21; Opp. at 8-11. Although it is true several of the expenses could, conceivably, be eligible for reimbursement under Section 15(a)(1)(A), such as her need for a specialized bed or other in-home items, Petitioner has not provided objective corroboration (e.g., a written doctor's recommendation) that these were in fact treatment-required.[14] I further note that several of the requested items, such as a wireless computer keyboard, constitute expenditures that are routinely incurred *outside* the specific context of SIRVA treatment. For these reasons, the remaining expenses are denied. Petitioner is therefore entitled to a total award of $3,363.46 in past unreimbursable expenses.

### C. Future Unreimbursable Expenses

Petitioner has additionally requested that she be awarded future unreimbursable expenses of $2,880.00, constituting the projected cost of Petitioner's gym membership from January 2020 through April 2039. Br. at 21-23. In support, Petitioner asserts that she has residual functional limitations and continues to use a gym to perform her home exercise program. *Id.* at 22-23. Respondent in his briefing opposes any future unreimbursable expenses. Opp. at 11-12.

---

[14] I further note that, even if Petitioner's RELAVEX topical pain cream were prescribed and/or medically recommended, I would likely not award reimbursement for it because it contains cannabidiol ("CBD") as an ingredient. Respondent persuasively has established that the Program, a creation of federal law, cannot lawfully pay for cannabis-related treatment. *See* Opp. at 9.

8

After reviewing the available evidence, I decline to award any future unreimbursable expenses (all of which are associated with the gym membership expense). I find Respondent's arguments, as set forth in his brief and at the hearing, to be persuasive. Opp. at 11-12. Specifically, Petitioner has not presented objective evidence confirming the need for a gym to complete her home exercise program, and Petitioner appears to use her gym for purposes other than injury rehabilitation. *See* Hearing Transcript; *see also* Exs. 15, 18. Moreover, there is a lack of evidence substantiating that Petitioner will be required to complete a home exercise program for the entire period requested. For these reasons, Petitioner's request for future unreimbursable expenses is denied.

### IV. Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $160,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[15] I also find that Petitioner is entitled to $3,363.46 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $163,363.46 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[16]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[15] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

9